EDWARDS, Judge.
Robert Dalgo, individually and as administrator of the estate of his son, Jessie, sued Dr. Roy A. Landry in a malpractice action for damages. The lower court found in favor of Dr. Landry and dismissed plaintiff’s suit.
On appeal, Dalgo urges that the trial judge did not apply the correct standard of care. We affirm.
BACKGROUND FACTS
On Friday morning, June 5,1981, Mr. and Mrs. Dalgo went to the emergency room at Our Lady of the Lake Hospital in Baton Rouge, Louisiana, with their ten-year-old son, Jessie, who was complaining of an earache. Jessie told Dr. Landry, an emergency room physician at the hospital, that it felt like a bug was in his ear. Upon examination, Dr. Landry discovered an obstruction in the ear canal that appeared to be blood and wax. Jessie’s ear was irrigated in order to try to remove some of this obstruction. Further examination and clearing of the ear canal was prevented by the pain and discomfort of the child. Dr. Landry was unable to see the source of the bleeding and pain. He prescribed eardrops to prevent infection and reduce swelling, and Tylenol # 3 for pain. He also advised the Dalgos to see their family physician on Monday. However, Mrs. Dalgo testified that on Sunday she and her husband removed a dark brown bug from Jessie’s ear, at which point his pain stopped. Subsequently, this malpractice action was filed, alleging negligent treatment by Dr. Landry.
STANDARD OF CARE
In a malpractice suit, the plaintiff’s burden of proof is set forth in R.S. 9:2794(A):
“A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., or a dentist licensed under R.S. 37:751 et seq., the plaintiff shall have the burden of proving:
“(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.
“(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
“(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.”
The above statute thus requires Dalgo to establish the degree of care ordinarily exercised by emergency room physicians under similar circumstances and that Dr. Landry deviated from this degree of care causing damages.
At the trial, the plaintiff did not present a physician to establish the degree of care required of an emergency room physician. However, Dr. Landry presented Dr. Thomas P. Raggio, an ear, nose and throat specialist, to testify on this issue.
Dr. Raggio testified that an emergency room physician is more of a screening physician to do strictly emergency cases, and should not be expected to render the same care that a specialist would provide. When presented with the factual background of this case and Dr. Landry’s actions, he stated that Jessie was given adequate care. Dr. Landry’s inability to see the bug, according *1161 to Dr. Raggio, was understandable under the circumstances, i.e., the combination of blood, wax and a dark brown object in the ear of a pained, frightened ten-year-old child. Moreover, Dr. Raggio further testified that Dr. Landry acted properly by not attempting to remove the obstruction from Jessie’s ear.
Based on the foregoing testimony, the trial judge held in favor of defendant and dismissed plaintiff’s suit. Dalgo, on appeal, urges that the judge did not apply a standard of care for an emergency room physician that encompassed a live bug situation. However, the trial judge’s oral reasons for judgment reveal that the proper standard of care was applied:
“I also believe that emergency room physicians are in a different forum than a specialist and had ... Dr. Landry been an ear specialist, we would have a totally different case; however, it is function of an emergency room to deal with the emergency and that means stabilize the patient so that something can be done. Dr. Raggio testified that even if he had seen the bug, if it was still alive it would have to be killed first because removing a live bug would just create more damage .... Whether Dr. Landry should have or should not have seen the bug is a question I don’t think this Court is in a position to answer. The fact that he didn’t but treated it as though he had, trying to reduce the swelling, to stabilize the pain so that it could be visualized and sending him to someone who was in a better position to treat the problem did met the standard of care common to emergency room physicians in the community.” (Tr. at 121)
We find no error in the trial court’s conclusions. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
DECREE
Accordingly, based on the above reasons, we affirm the judgment of the lower court at plaintiff’s cost.
AFFIRMED.